# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | **Sitting Judge if Other than Assigned Judge** | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 2586 | **DATE** | 3/19/2012 |
| **CASE TITLE** | DeAndria Campbell vs. Adventist Hinsdale Hospital | | |

**DOCKET ENTRY TEXT**

Adventist Hinsdale Hospital's motion for summary judgment [#38] is granted. Judgment is entered in favor of Adventist. This case is terminated. See statement below.

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

  Plaintiff Deandria Campbell filed a complaint against Adventist Hinsdale Hospital alleging claims for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Before the court is Adventist's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).[1] For the following reasons, the motion [#38] is granted.[2]

**Background**[3]

  Adventist is not-for-profit, acute-care hospital located in Hinsdale, Illinois. Campbell, an African-American woman, was hired by Adventist on March 8, 2006 as a data entry clerk. Campbell was initially hired as a casual (not full-time) employee in the laboratory department and was offered a full-time position a few months later. As a data entry clerk, Campbell was responsible for entering data onto computer systems, labeling blood, registering patients, verifying insurance, and labeling specimens. Data entry clerks are supervised by a team lead, who reports to a manager, who in turn reports to Adventist's director.

Campbell's Work Performance

  In September 2006, Campbell was disciplined for making an entry error on an order and mislabeling a specimen. She received "verbal counseling" and her disciplinary discussion record reflects that possible future consequences could include a written warning or discharge. (Def.'s Ex. 2.) She did not dispute the basis for the verbal counseling.
  In May 2007, Campbell was disciplined for making an order entry error and mislabeling a specimen. She received a written reminder and was given a work improvement plan that specified that she would not mislabel any specimens for one year. (Def.'s Ex. 3.) Campbell was disciplined again in August and September 2007, when she received a verbal counseling and written reminder for excessive tardiness and

**STATEMENT**

absenteeism. (Def.'s Ex. 4.) She did not dispute the basis for the May, August, or September 2007 disciplines. Campbell was rated "satisfactory" on her 2007 Performance Evaluation.

In July 2008, Campbell was disciplined for insubordination and received a written reminder. In October 2008, Campbell received a written reminder for using the wrong client identification and registering a patient to the wrong location. (Def.'s Ex. 7.) She did not disagree with the July or October 2008 disciplines. Campbell received a 2.85 out of 3.00, a rating of "needs improvement," on her 2008 Performance Evaluation. Her evaluation stated that she needed to improve her attendance and the accuracy of her work. (Def.'s Ex. 6.)

In January 2009, Campbell committed another error and became loud and hostile when her team lead, Natalie Angion, spoke to her about the issue. Campbell received a final written warning and understood that any additional infraction would result in termination. (Def.'s Ex. 8.) One month later Campbell received another verbal counseling for tardiness and absenteeism. (Def.'s Ex. 9.) She did not agree with this discipline.

Justin Jandrisits was hired as a new manager in the laboratory department in April 2009. Soon after he started, he reviewed Campbell's work and found additional errors. Campbell received another verbal counseling for creating duplicate medical records in June 2009. (Def.'s Ex. 10.) She did not agree with this discipline. On July 29, 2009, Campbell was placed on a probation/work improvement plan for continued poor performance. She was instructed to limit telephone and internet use, minimize distractions, improve her work volume and decrease her registration errors. The plan notes that Campbell had made a total of thirty-four registration errors since November 2008, of which eighteen were duplicate medical records. (Pl.'s Ex. C.)

In August 2009, Campbell received another verbal counseling for placing double orders on a patient and mislabeling a specimen and a sample. Campbell denies that she made the errors. Campbell received a rating of "needs improvement" on her 2009 Performance Evaluation, which notes that she performed poorly in the categories of checking her work for completeness, accuracy and format, and performing registration functions associated with order entry. (Def.'s Ex. 11.) Campbell took a leave of absence during the fall of 2009 and her work performance improvement plan was extended. When she returned in mid-December 2009, Jandrisits told her that other co-workers were complaining that she had been gone for long amounts of time and was not doing her job. Jandrisits continued to receive reports that Campbell was not meeting the goals of her performance improvement plan. Jandrisits consulted with his supervisor, the team leads, and Adventist's outreach manager and determined that Campbell should be fired. She was terminated on December 30, 2009.

Co-Workers' Complaints About Campbell

Sometime in May 2009, Jandrisits received a complaint about Campbell from one of her co-workers, Fay Bautista.[4] Bautista said that Campbell left her work station to talk with different staff members and mentioned that Campbell frequently approached another co-worker, Mary Cummings. In June 2009, Jandrisits approached Cummings and asked her if Campbell was indeed trying to talk to her during work hours. During this conversation, Jandrisits remarked that Cummings and Campbell didn't seem like a "good fit." Jandrisits testified that he made this comment because Cummings had previously complained that Campbell was not a good employee because she made too many personal phone calls and created tension in the lab.

Campbell's Complaint About Jandrisits

In early July 2009, Cummings told Campbell about her June 2009 conversation with Jandrisits. She

**STATEMENT**

said that Jandrisits had asked about her relationship with Campbell and had expressed surprise that they socialized. Campbell stated that she believed Jandrisits's comment was racially discriminatory, because she is African-American and Cummings is white. Campbell spoke to another team lead about the comment and to Jandrisits's supervisor. Jandrisits agreed that they should involve another supervisor and told Campbell that he took her concerns seriously. Campbell and Jandrisits then met with Jane Johnson, an outreach manager. Jandrisits told Campbell that he did not intend to make a racially discriminatory comment and apologized to Campbell for having offended her.

A few weeks later, Campbell submitted a written complaint about Jandrisits's comment to the director of human resources, Gary Giertuga. Giertuga investigated the complaint, reviewed Campbell's personnel file, and concluded that no discriminatory or retaliatory conduct had occurred. Giertuga told Campbell about his findings and told her to notify him of any further concerns.

Campbell filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 30, 2009.

**Summary Judgment Standard**

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. *Id*. While the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor, *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), where a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323–24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Id*. at 323. In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id*. at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000).

**Analysis**

I.      Race Discrimination Claim

Campbell may establish race discrimination under Title VII using the direct or indirect method of proof. *Scaife* v. *Cook Cnty.*, 446 F.3d 735, 739 (7th Cir. 2006) (citing *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802–04, 93 S. Ct. 1817, 36 L. Ed. 2d. 688 (1973)). Campbell admits that she does not have direct evidence of race discrimination, so she must proceed under the indirect method. Under the *McDonnell Douglas* indirect method, Campbell must first make out a *prima facie* case by showing that (1) she is a member of a protected class, (2) she met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) her employer treated similarly situated employees more favorably. *Id.* Once Campbell has established a *prima facie* case, the burden shifts to Adventist to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If Adventist provides a legitimate, nondiscriminatory reason for the employment action, the burden shifts back to Campbell to demonstrate that the proffered reason is a pretext for unlawful discrimination. *See id.* at 739–40.

Adventist argues that Campbell has failed to satisfy the second and fourth requirements of the *prima facie* case. Adventist cites Campbell's numerous disciplines and her failure to follow her work improvement plan as evidence that she was not meeting its legitimate performance expectations. Campbell responds that it

**STATEMENT**

was impossible to get a perfect score on her yearly Performance Evaluations and that she received a 4.1% raise in 2007 and a 3.6% raise in 2008. She concludes that therefore there is a question of fact as to whether she was meeting Adventist's legitimate expectations. The fact that Campbell received a modest raise in 2007 and 2008 does not indicate that she met Adventist's employment expectations in 2008 and 2009, however. Indeed, her performance in 2009, prior to her termination, is most important. Moreover, Campbell does not dispute that she received numerous disciplines in 2008 and 2009 or cite any evidence indicating that Adventist's employee rating system was applied unfairly to her.

Campbell also argues that she did not violate her July 2009 work process improvement plan in August 2009 because the plan provided that she could make one duplicate medical record error per month. (*See* Pl.'s Ex. C.) Campbell was not disciplined for creating a duplicate medical record, however. She was disciplined for placing double orders on a patient, mislabeling a sample, and mislabeling a specimen. (*See* Def.'s Ex. 13.) If Campbell indeed committed the alleged violations (which she disputes), she would not have been met the expectations of her work performance improvement plan.

Even if the court were to conclude that there is an issue of fact as to whether Campbell met Adventist's employment expectations, Campbell's claim would fail because she has not cited any evidence showing that Adventist treated similarly situated employees differently. Campbell asserts that Jandrisits received complaints about Bautista, who is Pakistani, but failed to follow-up on those complaints. In doing so, she blatantly misstates the record. Jandrisits testified that he received complaints *from* Bautista *about* Campbell – there is no evidence that Jandrisits received any complaints about Bautista. Therefore Campbell's *prima facie* fails. Adventist's motion for summary judgment as to Campbell's race discrimination claim must be granted.

II. Retaliation Claim

Campbell proceeds under the indirect method of proof for her retaliation claim. The elements for a *prima facie* case of retaliation, like those for a *prima facie* case of discrimination, require Campbell to show that (1) she engaged in a protected activity, (2) she met Adventist's legitimate expectations, (3) she suffered a materially adverse action, and (4) she was treated worse than a similarly situated employee who did not engage in the protected activity. *Scaife*, 446 F.3d at 739. Campbell has failed to establish the fourth element of her *prima facie* case. She again argues that Bautista was a similarly situated employee because Jandrisits received complaints about Bautista. As discussed *supra*, there is no evidence that Jandrisits received complaints about Bautista. Because Campbell has failed to establish a *prima facie* case of retaliation, Adventist's motion for summary judgment on Campbell's retaliation claim must be granted.

---

1. Adventist also requests costs but fails to specify any statutory or other grounds for awarding costs. Accordingly, the request for costs is denied.

2. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5(f)(3). Venue is proper under 42 U.S.C. § 2000e-5(f)(3) because the alleged unlawful employment practice occurred in this district.

3. The facts set forth in this section are derived from the statements of fact and supporting documents submitted by the parties to the extent they comport with Local Rule 56.1. They are taken in the light most favorable to Campbell, the non-movant.

4. Campbell asserts, in her statements of fact, that Jandrisits received complaints about Bautista from Cummings. This is incorrect. Jandrisits testified that he received a complaint *from* Bautista regarding Campbell. (*See* Jandrisits Dep. at 36, 45–46, 72–74.)